IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTHONY JOE FISHER,

    Plaintiff,

vs.                                                              No. 2:21-CV-00253-KRS

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court upon Plaintiff Anthony Joe Fisher's Motion to Reverse the Administrative Law Judge['s] ("ALJ's") Unfavorable Decision Dated August 28, 2020, or Alternatively, to Remand the Case Back to the Administrative Law Judge (Doc. 20) and brief in support thereof (Doc. 21), dated November 5, 2021, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Fisher is not entitled to supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. The Commissioner responded to Fisher's motion on March 9, 2022 (Doc. 27), and Fisher filed a reply brief on April 21, 2022 (Doc. 30). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ erred in his decision and will therefore GRANT Fisher's motion and remand this case for further proceedings consistent with this opinion.

**I. PROCEDURAL POSTURE**

On May 28, 2014, Fisher protectively filed an initial application for disability insurance benefits and protectively filed an application for supplemental security income, alleging

disability beginning on February 1, 2010. (*See* AR at 93) (prior ALJ decision). After these claims were denied at the initial and reconsideration levels, ALJ Frederick Upshall, Jr. conducted a hearing on October 19, 2016. (*See id.*). On September 1, 2017, ALJ Upshall determined that Fisher was not disabled under Title II or Title XVI. (*See id.* at 93-126). On July 26, 2018, the Appeals Council declined to review ALJ Upshall's decision, making ALJ Upshall's decision the final decision of the Commissioner as to those claims. (*See id.* at 132-35). There are no indications that Fisher sought judicial review of ALJ Upshall's decision.

On September 17, 2018, Fisher filed an initial application for supplemental security income in the agency proceedings underlying the instant case. (*See* AR at 138). Fisher alleged that he had become disabled on June 15, 2016, due to severe back pain, anxiety, post-traumatic stress disorder ("PTSD"), hepatitis C, degenerative disc disease, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), anti-personality disorder, and antisocial disorder. (*Id.* at 140-41). His application was denied at the initial level on January 28, 2019 (*id.* at 138), and at the reconsideration level on July 11, 2019 (*id.* at 156). After a request for reconsideration was denied (*see* AR at 183-85), Fisher requested a hearing (*id.* at 189), which ALJ J. Leland Bentley conducted on July 28, 2020 (see *id.* at 32-63). Fisher was represented by counsel and testified at the hearing (*id.* at 37-55), as did a vocational expert (*id.* at 53, 55-62).

On August 28, 2020, ALJ Bentley issued his decision, finding that Fisher was not disabled under the relevant sections of the Social Security Act. (*Id.* at 12-25). Fisher requested that the Appeals Council review ALJ Bentley's decision (*id.* at 266-72), and on February 16, 2021, the Appeals Council denied the request for review (*id.* at 1-3), which made ALJ Bentley's decision the final decision of the Commissioner. On March 22, 2021, Fisher filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a

sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

## B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. ALJ BENTLEY'S DETERMINATION

ALJ Bentley reviewed Fisher's claim pursuant to the five-step sequential evaluation process. (AR at 13-14). First, ALJ Bentley found that Fisher had not engaged in substantial gainful activity since September 17, 2018, the date of his application. (*Id.* at 14). ALJ Bentley then found at step two that Fisher suffered from the following severe impairments: bilateral carpal tunnel syndrome, degenerative joint disease of the right knee, cervical and lumbar degenerative disc disease, anxiety, depression, PTSD, ADHD, mood disorder, bipolar disorder, and a history of substance abuse in remission. (*See id.*). At step three, ALJ Bentley concluded that Fisher did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 15).

Proceeding to the next step, ALJ Bentley reviewed the evidence of record, including medical opinions and evidence from Fisher's treating and consulting providers, prior administrative medical findings, and Fisher's own subjective symptom evidence. (*See id.* at 18-23). Having done so, ALJ Bentley concluded that Fisher possessed an RFC to perform light work with certain exertional and nonexertional modifications. (*See id.* at 17-18). Based on this RFC, ALJ Bentley found that Fisher was unable to perform any past relevant work. (*See id.* at 23-24).

Moving to step five, ALJ Bentley determined that Fisher was able to perform other jobs existing in significant numbers in the national economy. (*See id.* at 24-25). ALJ Bentley therefore concluded that Fisher's work was not precluded by his RFC and that he was not disabled under Title XVI. (*See id.* at 25).

### IV. DISCUSSION

Fisher argues that ALJ Bentley erred by failing to consider and discuss certain MRI results and other medical evidence (*see* Doc. 21 at 7-9), by failing to support his findings as to

Fisher's mental impairments with substantial evidence (*see id.* at 9-16), and by failing to adequately support his step-five findings (*see id.* at 16-19). Because remand is required as to the first issue, the Court does not reach Fisher's additional claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

The Tenth Circuit requires an ALJ to provide a "minimal level of articulation" of his assessment of the evidence of record:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

*Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal citations omitted). As a corollary of this rule, the ALJ may not "pick and choose" from among the record, "using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Nor may an ALJ "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)).[1] Failure to follow these controlling legal standards is grounds for remand. *See, e.g.*, *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

In reviewing the medical evidence of record, ALJ Bentley took note of the following imaging results:

> Prior to [Fisher's] cervical fusion in May 2019, magnetic resonance imaging ("MRI") of the cervical spine from November 2018 revealed moderate cervical spondylosis and degenerative changes throughout the cervical spine resulting in multilevel mild to moderate stenosis and neurofor[a]minal narrowing, but otherwise normal anatomic alignment with preservation of the normal vertebral heights and marrow signal intensities. MRI of lumbar spine from June 2017

---

[1] The undersigned cites *Bryant*, other unpublished decisions of the Tenth Circuit, and the district court decisions referenced in this opinion for their persuasive value unless context indicates otherwise.

6

>revealed subtle grade 1 anterior spondylolisthesis of L5 relative to S1, and a disc bulge at L4-5, but no evidence of canal stenosis, nerve root impingement, edema, compression fractures, or deformities.

(AR at 19) (internal citations omitted). However, ALJ Bentley did not address the results of an MRI of the cervical spine performed on Fisher on August 30, 2016, which recorded the following relevant results:

>FINDINGS: . . .
>
>DISCS/SPINAL CANAL/NEURAL FORAMINA: . . .
>
>C3-C4: No significant disc disease. No central canal stenosis. Moderately severe bilateral foraminal stenosis.
>
>C4-CS: No significant disc disease. No central canal stenosis. Mild left and moderate right foraminal stenosis.
>
>C5-C6: Moderate disc disease with left lateral disc protrusion impinging the lateral recess and proximal neural foramen. AP canal diameter is 8 mm, moderate central canal stenosis. Severe bilateral foraminal stenosis.
>
>C6-C7: Moderate disc disease with diffuse bulge. No central canal stenosis. Severe bilateral foraminal stenosis.
>
>C7-Tl: Mild disc disease. No central canal stenosis. Moderate right and mild left foraminal stenosis.
>
>IMPRESSION:
>
>Significant spondylosis, most severe at C5-C6.

(*Id.* at 452). Fisher argues that because the August 2016 MRI results "painted a more dire picture of [his] cervical spine," ALJ Bentley was obligated to address those findings. (*See* Doc. 21 at 8-10) ("We recognize that, when faced with contradictory evidence, the ALJ has wide discretion to resolve the conflict. The problem here is the ALJ did not even acknowledge the conflicting evidence.").

Conversely, the Commissioner argues that the August 2016 MRI results were "subject to res judicata" because that MRI "was considered and discussed in the 2017 ALJ decision." (*See*

7

Doc. 27 at 5). In his 2017 adjudication of Fisher's earlier SSA claim, ALJ Upshall took note of the results of Fisher's August 2016 cervical MRI, as well as the results of his June 2017 lumbar MRI, and summarized his findings as to both. (*See* AR at 109-10) (cervical MRI); (*id.* at 111) (lumbar MRI). Because ALJ Upshall ultimately determined that Fisher was not disabled during the period in question—*i.e.*, from February 2010 through the September 2017 decision date—after reviewing these MRI results, the Commissioner contends that ALJ Bentley did not need to discuss those results when adjudicating the present claim, and indeed "*should not* [have] considered [them] here." (*See* Doc. 27 at 4-5) (emphasis added).

      The Commissioner's argument largely turns on nonbinding guidance recognizing that "[r]es judicata may apply in a social security case when a previous determination is made about the claimant's rights 'on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action.'" *Gonzales v. Colvin*, 515 F. App'x 716, 720 (10th Cir. 2013) (unpublished) (quoting *Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009) (nonprecedential order and judgment)); *cf.* 20 C.F.R. § 416.1457(c) (permitting ALJ to dismiss hearing requests where "we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final"). And indeed, because Fisher did not appeal ALJ Upshall's September 2017 decision following the Appeals Council's denial of review, ALJ Upshall's determination regarding the claim at issue in that agency proceeding was final and is not subject to reexamination. *See, e.g.*, *Hunter v. Astrue*, 321 F. App'x 789, 791 (10th Cir. 2009) (unpublished) (citing *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990)); *see also* 20 C.F.R. § 416.1455 (noting that ALJ decision is generally final and binding); *id.* § 416.1481 (stating that ALJ decision is binding if Appeals Council denies review).

8

But Fisher's motion is concerned not with the disability determination reached in ALJ Upshall's prior adjudication in September 2017, but with the present supplemental security income adjudication by ALJ Bentley concerning the period beginning September 2018.[2] And on its own, the fact that ALJ Upshall's decision was binding as to the claims at issue in the prior proceeding does not necessarily mean that evidence considered at that time cannot or should not be considered in a subsequent proceeding. As a counterexample, had ALJ Upshall determined that the August 2016 MRI results were not proper to consider because they were not based on medically acceptable clinical or laboratory diagnostic techniques, perhaps that determination could amount to a decision on an "issue" that is subject to res judicata or collateral estoppel, and perhaps that conclusion would bar ALJ Bentley's consideration of that evidence in the present proceeding. But ALJ Upshall did not reach any determination as to the propriety of considering the August 2016 MRI results; he only found that, *as to the prior application for benefits*, the fact that Fisher's treatment to date had been "fairly routine and conservative" meant that the MRI results "only partially support[ed]" Fisher's allegations in that proceeding. (*See* AR at 111).[3] That finding has no inherent bearing on the degree to which the August 2016 MRI findings

---

[2] That said, it was not a mistake for the Commissioner to raise concerns to the contrary. Fisher's motion originally proposed that ALJ Bentley could have found that he was disabled for a period beginning as early as August 30, 2016. (*See* Doc. 21 at 16). But as the Commissioner correctly notes (*see* Doc. 27 at 4-5), Fisher's present supplemental security income claim, if successful, could only be payable in the month following his application for this claim. *See* 20 C.F.R. § 416.335. This means that it would not have been proper for ALJ Bentley to determine whether Fisher was disabled prior to September 1, 2018, the beginning of the month in which Fisher filed his current application. Fisher now concedes in his reply brief that his potential disability prior to September 1, 2018, is not at issue here. (*See* Doc. 30 at 5-6) (conceding that Commissioner "is correct as to the start date").

[3] ALJ Upshall's relevant findings were as follows:
> Overall, the objective medical evidence only partially supports the claimant's alleged symptoms and limitations. Recent x-rays and MRIs confirm he has severe degenerative disc disease of the cervical and lumbar spine; however, his treatment has been fairly routine and conservative. He reportedly underwent physical therapy, but there is no evidence he actually followed through. He had one set of injections to his thoracic spine in 2016, but has not had any injections in his lumbar spine or cervical spine. There is no evidence to support the claimant's claim that he was recommended surgery on his cervical spine other than his subjective reports to various primary care providers. The claimant has also provided multiple inconsistent statements regarding why the surgery was cancelled.

(AR at 111).

support Fisher's *present* claims concerning his symptoms and limitations. This is especially the case where, as Fisher insists (*see* Doc. 30 at 5), newer evidence in the record may warrant a different conclusion as to his current medical conditions and his related symptoms and limitations. Accordingly, the Commissioner's argument that the August 2016 MRI results are "subject to res judicata" simply because the results were "considered and discussed in the 2017 ALJ decision" (*see* Doc. 27 at 5) is without merit.

Without explicitly saying as much, the Commissioner also seems to suggest that ALJ Bentley did not need to consider the August 2016 MRI results because they were allegedly not part of Fisher's "complete medical history." (*See* Doc. 27 at 4 n.4). In support of this apparent argument, the Commissioner cites 20 C.F.R. § 416.912(b) to note that the term "complete medical history means records from medical sources covering at least 12 months prior to the month in which the claimant files his application." (*See id.*). Since the Commissioner contends that ALJ Bentley properly "considered Plaintiff's 'complete medical history,'" it is implied that Fisher's August 2016 MRI results were properly excluded from consideration because they date to earlier than 12 months before his application date. (*See id.*).

However, a full review of the relevant regulatory language makes clear that the term "complete medical history" as used in § 416.912(b)(1) is concerned solely with an ALJ's obligation to develop a claimant's record:

> (1) Development. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. . . .
>
> (ii) Complete medical history means the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application. If you say that your disability began less than 12 months before you filed your application, we will develop your complete medical history beginning with the

>month you say your disability began unless we have reason to believe your disability began earlier.

20 C.F.R. § 416.912(b). Thus, § 416.912(b)(1) merely stands for the proposition that ALJ Bentley might not have had any duty to pursue and obtain the August 2016 MRI results if they had not already been part of Fisher's case record, since they fell outside the twelve-month period prior to his application date.[4]

But the language in § 416.912 concerning an ALJ's duty to *develop* the record does not define the parameters of an ALJ's duty to *consider* medical evidence that is *already* part of that record.[5] That issue is addressed in a different regulation:

>Evidence considered. We will consider *all evidence in your case record* when we make a determination or decision whether you are disabled. See § 416.920b.

20 C.F.R. § 416.920(a)(3) (emphasis added); *see also* 20 C.F.R. § 416.920b (providing that ALJ will "make findings about what the evidence shows" "[a]fter we review *all* of the evidence relevant to your claim") (emphasis added). Here, there is no question that Fisher's August 2016 MRI results are part of his case record (*see* AR at 451-53), and those results would on their face appear to be relevant to Fisher's claims of disabling degenerative disc disease of the cervical spine. Therefore, whether or not those results might have been part of Fisher's "complete medical history" for purposes of an ALJ's duty to develop the record had they not already been

---

[4] Of course, the plain language of the regulation does not preclude an ALJ from developing the record beyond the referenced twelve-month period if it is necessary to do so. *See* 20 C.F.R. § 416.912(b)(1) (noting possible need to develop earlier record if "there is reason to believe" that doing so is "necessary").

[5] This observation is confirmed by the other uses of the term "complete medical history" throughout Part 416 of SSA's regulations, all of which concern an ALJ's duty to develop the record, not his duty to consider the evidence that is already part of the record before him. *See* 20 C.F.R. § 416.945(a)(3) (citing § 416.912(c)-(e)); *id.* §§ 416.989, 416.989a (addressing ALJ duty to develop "a complete medical history of at least the preceding 12 months" when conducting a continuing disability review).

11

present, ALJ Bentley was nonetheless required to consider those results once they were a part of that record.[6]

In summary, res judicata did not preclude ALJ Bentley from considering Fisher's August 2016 MRI results, and 20 C.F.R. § 416.912(b) did not relieve ALJ Bentley of his duty to consider that medical evidence since it was already part of the record in this proceeding. However, this does not necessarily mean that ALJ Bentley erred by failing to explicitly discuss those results, since he was only obligated to address "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *See Clifton*, 79 F.3d at 1010. The remaining question, then, is whether the August 2016 MRI results fall into one of these two categories of evidence. Fisher argues that they do (*see* Doc. 21 at 7-9), while the Commissioner does not address the issue.

Having reviewed the record in its entirety, the Court has no difficulty concluding that the August 2016 MRI results amount to "significantly probative evidence" whose findings were implicitly rejected by ALJ Bentley. The ALJ cited a more recent MRI of Fisher's cervical spine, dating to November 2018, which he described as showing only "moderate cervical spondylosis and degenerative changes throughout the cervical spine resulting in multilevel mild to moderate stenosis and neurofor[a]minal narrowing,[7] but otherwise normal" findings. (AR at 19); (*see also*

---

[6] The Court's rejection of the Commissioner's arguments regarding res judicata and Fisher's "complete medical history" is further bolstered by ALJ Bentley's own decision. In addition to the results of Fisher's August 2016 MRI of the cervical spine, the record also contains the results of a June 2017 MRI of his lumbar spine. (AR at 643). When addressing Fisher's earlier claim, ALJ Upshall discussed both MRI results in tandem. (*See id.* at 111) (discussing results before concluding that objective record "only partially supports" Fisher's earlier claims). However, ALJ Bentley *also* considered the June 2017 MRI results when addressing Fisher's present claim. (*See id.* at 19) (noting results of "MRI of lumbar spine from June 2017"). It does not appear that ALJ Bentley thought it improper to consider these results even though ALJ Upshall had previously done so, and even though those results fell outside of the twelve-month window before Fisher submitted his application in the present claim. This fact weighs against the Commissioner's argument that ALJ Bentley "should not [have] considered" records that were previously addressed by ALJ Upshall or that pre-dated Fisher's September 2018 claim by over twelve months. (*Cf.* Doc. 27 at 5).
[7] ALJ Bentley failed to note that the neuroforaminal narrowing at C4-C5 and C6-C7 was classified as "severe" in the November 2018 MRI results. (*See* AR at 640-41). While the Court need not address whether this omission also

*id.* at 640-41) (November 2018 MRI results). ALJ Bentley's summary of those results was plainly in conflict with the results of the August 2016 MRI, which ALJ Upshall accurately characterized as showing "severe degenerative disc disease" (*id.* at 111) in light of the findings of, among other things, severe bilateral foraminal stenosis at C5-C6 and C5-C6, mild to moderately severe stenosis at other sites, mild to moderate disc disease at multiple sites, and an overall impression of "[s]ignificant sypondylosis, most severe at C5-C6" (*id.* at 452). Moreover, as Fisher contends, other parts of the record could be construed as consistent with the August 2016 MRI findings. (*See, e.g.*, *id.* at 623) (March 23, 2017 radiology report showing "moderate to severe bilateral neuroforaminal narrowing" at "C5-C6 and C6-C7").[8] Because the August 2016 cervical MRI results are inconsistent with ALJ Bentley's description of the November 2018 cervical MRI results and provide greater support for a finding of disability, the former results amount to "significantly probative evidence" concerning Fisher's claim. *See Clifton*, 79 F.3d at 1010. And by ignoring the more serious findings of the August 2016 MRI results while explicitly discussing the arguably less severe findings included in the November 2018 MRI results, ALJ Bentley implicitly rejected the former results. *See Carpenter*, 537 F.3d at 1265 (holding that ALJ may not "pick and choose" from among the record, "using portions of evidence favorable to his position while ignoring other evidence"). This was legal error, and as such, remand is required. *See, e.g.*, *Byron*, 742 F.2d at 1235 (citations omitted).

---

amounted to impermissible picking and choosing among the evidence, the ALJ will take more care in his discussion of the MRI results on remand.

[8] Although counsel for Fisher draws the Court's attention to this report, he does so by citing broadly to a *107-page* collection of documents, of which only *one page* contains the relevant record. (*See* Doc. 21 at 8) (citing "Exhibit 7F, Tr. 17-8 pages 115-221"). In the future, counsel will cite <u>directly</u> to any specific records in question that are intended to support his client's position. *Cf., e.g.*, *Phillips v. Colvin*, 67 F. Supp. 3d 1286, 1291 (D. Colo. 2014) (quoting *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995)) ("Just as '[j]udges are not like pigs, hunting for truffles buried in briefs,' . . . this [C]ourt is neither authorized nor inclined to search the administrative record in search of evidence which might lend support to [a party's position].") (internal citation omitted).

There may well have been good reasons for ALJ Bentley to reject the significantly probative results of the August 2016 cervical MRI or to otherwise reach a finding of nondisability despite those results.[9] What he may not do, however, is reject that medical evidence without explaining his rationale for doing so, *see Clifton*, 79 F.3d at 1010, while instead highlighting other evidence that more closely aligns with a finding of nondisability, *see Carpenter*, 537 F.3d at 1265. On remand, the ALJ will "consider all evidence in [Fisher's] case record when [making] a determination or decision whether [he is] disabled," *see* 20 C.F.R. § 416.920(a)(3); if he continues to determine that a finding of disability is not proper despite the August 2016 MRI results, he will explain why this is the case. *See Clifton*, 79 F.3d at 1010.

## V. CONCLUSION

ALJ Bentley erred in his review of Fisher's application for supplemental security income by failing to address significantly probative evidence of record in keeping with controlling legal standards. Accordingly, Fisher's motion (Doc. 20) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

                                   _____
                                   **KEVIN R. SWEAZEA**
                                   **UNITED STATES MAGISTRATE JUDGE**

---

[9] The Court does not, however, find that ALJ Bentley's error on this point was harmless. The Commissioner has not raised any harmless-error arguments as to this issue, and the Court cannot on its own confidently conclude from this record "that no reasonable administrative factfinder, following the correct analysis, could have resolved [the matter of Fisher's disability] in any other way" had the proper legal standards been followed. *See Allen v. Barnhart*, 357 F.3d at 1140, 1145 (10th Cir. 2004) (discussing harmless-error standard).